IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | |
|---|---|
| EARL G. WILLIAMS, #710963 § | |
| § | |
| V. § | CIVIL ACTION NO. G-03-221 |
| § | |
| LT. THOMAS DAY § | |

## REPORT AND RECOMMENDATION

Plaintiff Earl G. Williams, proceeding *pro se*, filed this civil rights complaint pursuant to 42 U.S.C. § 1983, complaining of excessive use of force at the hands of Defendant Lt. Thomas Day on November 27, 2002, at the Ramsey II unit. Currently before the Court is Defendant Day's Motion to Dismiss, filed on October 27, 2004, to which Plaintiff has filed a response. Having reviewed the Motion, Plaintiff's complaint and relevant pleadings, this Court now makes the following Report and Recommendation to the District Court.

Plaintiff alleges that on November 27, 2002, at approximately 12:30 p.m., he attempted to enter the dayroom at the Ramsey II unit. At the same time, officer Michelle Woolsey announced commissary and approximately thirty male inmates immediately crowded around her, attempting to give her their card in order to exit. Because the dayroom door was open and unsecured, Woolsey began screaming at the inmates to get back and then called for assistance from Defendant Day. Day responded to the alert by running to the dayroom, grabbing the door handle and attempting to pull it closed in an effort to secure the area. Plaintiff states that he became caught in the doorway, unable to move because of the crush of other inmates, and as a result, was hit by the door as Day attempted to secure the area. As a result of Day's actions, Plaintiff asserts that his back was re-injured and he suffered "a lot of pain." He seeks monetary damages for his pain and suffering and reinstatement of his class and

custody status which were taken via a disciplinary action allegedly filed in retaliation for his filing this suit.

Day has moved for dismissal on the basis of qualified immunity. He maintains that Plaintiff was never hit with the door and argues that given the chaotic situation in the dayroom and officer Woolsey's shout for help, his actions, which consisted of nothing more than trying to close a door in order to secure the area, was reasonable in light of the circumstances and taken in a "good faith effort to maintain or restore discipline." *See Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Defendant also asserts that Plaintiff suffered no more than *de minimis* injury as a result of allegedly being caught in the doorway.

In response to Defendant's Motion to Dismiss, Plaintiff argues that the circumstances in the dayroom did not require the "reckless and malicious" use of force displayed by Day when he tried to close the dayroom door. Instead, Plaintiff avers that Day and Woolsey could have "simply ordered the inmates to sit down," and further notes that while there are "some inmates that do not always obey ... in situations such as the one at bar, inmates will do as they are told to keep from having privileges ... withdrawn for the day." Plaintiff opines that had Day chosen a different, less forceful manner to control the chaotic situation, which he posits posed no security threat, instead of actions chosen to "show Woolsey how 'manly' he was," Plaintiff would not have been assaulted with the door. Plaintiff also asserts that the fact that he did not suffer serious injury should not end the Eighth Amendment inquiry under *Hudson*.

The Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measure to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Under the Eighth Amendment, a correctional officer's use of

force against a prisoner may constitute cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1 (1992). The Fifth Circuit has instructed the courts in this circuit to consider five factors in analyzing excessive use of force claims: "(1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and, (5) any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 23. Thus, for a prisoner to state a claim for use of excessive force under the Eighth Amendment, he must show that the force was not applied in a good faith effort to maintain or restore discipline, but rather was administered in a malicious or deliberate manner to cause harm. *Rankin v. Klevenhagen*, 5 F.3d 103 (5th Cir. 1993). A prisoner must also have suffered a more than *de minimis* physical injury, but there is no categorical requirement that the physical injury be significant, serious, or more than minor." *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999).

Defendant seeks dismissal on the basis of qualified immunity, which "serves to shield ... government officials from civil liability for damages based upon the performance of discretionary functions if the officials' acts were objectively reasonable in light of then clearly established law." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This immunity is only defeated if the official took the complained of action "with the malicious intention to cause a deprivation of rights," or the official violated clearly established statutory or constitutional rights "of which a reasonable person would have known." *Id*. at 815; *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Plaintiff claims that he was injured when Defendant Day maliciously slammed the door on him while attempting to secure the dayroom area. Plaintiff admits that the situation in the dayroom on November 27, 2002 was chaotic, as commissary had been called and the dayroom door was open and unattended. At the time, officer Woolsey was the only prison official in an area that was filled with

approximately thirty inmates, all of whom were trying to exit the unsecured door at once. Plaintiff heard officer Woolsey scream for assistance from Defendant Day, and for the inmates to get back. When Day arrived at the scene of the incident, he was met with thirty male inmates who were all trying to leave the area and who were in the custody of only one female prison official. This Court cannot visualize a more desperate need for urgent action to "maintain or restore discipline." Prisons, by definition, "are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial, criminal and often violent behavior." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). They house persons who have necessarily shown a lapse in ability to control and conform their behavior by the normal impulses of self-restraint, and who have not shown an ability to conduct themselves in a way that reflects either a respect for law or an appreciation of the rights of others. *Id*. In attempting to restore order, Day did not act unreasonably. He did not attempt to restore order by spraying inmates with pepper spray or wielding a riot baton. Instead, he restored order and maintained prison security by closing a door. While it is unfortunate that Plaintiff may have found himself in the wrong place at the wrong time, there are simply no facts to suggest that Day's actions were excessive, unjustified or unreasonable. Plaintiff's declaration that a simple order would have just as effectively allayed the chaotic situation, despite his admissions that "some inmates do not always obey," is untenable and wholly unrealistic. The facts of this case as pleaded by Plaintiff clearly evidence that immediate action was necessary, and in this Court's opinion, the actions taken by Day were reasonable and taken in a "good faith effort to maintain or restore discipline"; Plaintiff has offered no facts to the contrary. Moreover, even if Day exaggerated his response to the security considerations in the dayroom, and this Court is certainly not suggesting that he did, the informed discretion of prison authorities demands that they, and not the courts, make the difficult judgments which

4

reconcile conflicting claims affecting the security of the institution. *See Hay v. Waldron*, 834 F.2d 481 (5th Cir. 1987).

It also appears from Plaintiff's complaint that he suffered little, if any, discernible harm as a result of allegedly being hit by the door. While he claims that he was injured by the door around noon, he did not go to the infirmary until later in the day, around 5:00 p.m. The medical records submitted by Plaintiff reflect only that he presented with pain and numbness in his left shoulder eight days prior to the dayroom incident. Plaintiff had "no apparent disease," normal "range of motion" and normal "hand strength and movement." He had pre-existing arthritis and was given ibuprofen for pain. There is simply no evidence to support Plaintiff's claim that he was injured by Defendant Day, or that his injuries, if any, were more than *de minimis.*

Plaintiff also seeks restoration of his class and custody status lost in retaliation for filing this lawsuit. Specifically, he alleges that either Lt. Fillmore or Lt. Teague wrote a disciplinary case against him because his cellmate had accused Plaintiff of threatening him. Fillmore and Teague were allegedly buddies of Defendant Day and Plaintiff opines that they wrote the disciplinary case in retaliation for his filing a grievance against Day for closing the door on him.

To state a claim of retaliation, an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident--such as the filing of a disciplinary report--would not have occurred. Mere conclusory allegations of retaliation will not withstand a summary judgment challenge. The inmate must produce direct evidence of motivation or, the more probable scenario, "allege a chronology of events from which retaliation may plausibly be inferred. *Woods v. Smith*, 60 F.3d 1161 (5th Cir. 1995). In the first instance, Teague and/or Fillmore were never named as Defendants in this cause and Day, the only named Defendant, did not write the alleged disciplinary case. The fact that Plaintiff believes that the

5

three are "covering" for each other and he has been made to "suffer because of it" is simply of no moment. Plaintiff's claim of retaliation against Defendant Day is misdirected and, nonetheless, based on nothing more than his own opinion and unsubstantiated, conclusory allegations which are wholly inadequate to support a claim of retaliation.

Fore the foregoing reasons, it is the **RECOMMENDATION** of this Court that Defendant's Motion to Dismiss (Instrument no. 19) be **GRANTED** and this case be **dismissed with prejudice as frivolous**.

The Clerk shall send a copy of this Report and Recommendation to the Plaintiff by the means in place for transmission of same. The Plaintiff shall have until **August 11, 2005** in which to have written objections physically on file in the Office of the Clerk. <u>The objections shall be mailed to the Clerk's Office at P.O. Drawer 2300, Galveston, Texas 77553</u>. Failure to file written objections within the prescribed time shall bar an aggrieved party from attacking on appeal the proposed factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

**DONE** at Galveston, Texas, this the ___25th___ day of July, 2005.

_____
John R. Froeschner
United States Magistrate Judge